IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ROGER CARR                                                      APPELLANT

VS.                                          CIVIL ACTION NO. 1:06CV318-SA-DAS

MICHAEL J. ASTRUE,
Commissioner of
Social Security                                                 APPELLEE

## MEMORANDUM OPINION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the applications of the plaintiff, Roger Carr, for supplemental security income benefits under Title XVI. The Court has considered the briefs of the parties, the applicable law, and the administrative record and finds as follows:

### I. FACTUAL AND PROCEDURAL HISTORY

The plaintiff filed an application for supplemental security income on July 30, 2003, alleging a disability onset date of March 26, 1996. The application was denied initially and upon reconsideration. On May 15, 2006, an administrative law judge ("ALJ") issued a decision unfavorable to the plaintiff, and on September 19, 2006, the Appeals Council denied the plaintiff's request for review. The ALJ's decision is now ripe for review under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The plaintiff was born on December 4, 1955, and was fifty years old on the date of the hearing decision. His past relevant work was that of a concrete finisher. With his application for disability benefits, the plaintiff argued he can no longer work because of heart trouble, high blood pressure, cognitive impairments, and anxiety related to his heart condition. Nevertheless, after consideration of the medical evidence, the subjective testimony at the hearing, and the testimony of

a vocational expert, the ALJ found that the plaintiff was not disabled. The ALJ found the plaintiff had the residual functional capacity ("RFC") to perform the full range of light work per Agency regulations. Based on this RFC, the vocational expert testified that the plaintiff could perform the jobs of small parts assembler and housekeeper.

## II. APPLICABLE LAW AND STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2] First, the plaintiff must prove he is not currently engaged in substantial gainful activity.[3] Second, the plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[5] Fourth, the plaintiff bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[6]

---

[1] See 20 C.F.R. §§ 404.1520, 416.920 (2000).

[2] Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).

[3] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2000).

[4] 20 C.F.R. §§ 404.1520(c), 416.920(c) (2000).

[5] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2000). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1525, 416.925 (1998).

[6] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2000).

2

If the plaintiff is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering the plaintiff's residual functional capacity, age, education, and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that he cannot, in fact, perform that work.[8]

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence" has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401, 91 S. Ct. 1420 (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found . . . where there is a 'conspicuous absence of credible choices' . . . ." Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (quoting Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that

---

[7]20 C.F.R §§ 404.1520(f)(1), 416.920(f)(1) (2000).

[8]*Muse*, 925 F.2d at 789.

3

of the Commissioner. Hollis v. Bowen, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994); Harrell, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. Paul v. Shalala, 29 F.3d 208, 210 (5th Cir. 1994).

## III. ANALYSIS

The sole issue before the Court is whether substantial evidence supports the Commissioner's determination that the plaintiff failed to meet the requirements for Medical Listing 12.05(c). The plaintiff essentially argues that uncontroverted medical evidence in the record establishes that he indeed met the requirements of this listing.

Under the theory of presumptive disability, a claimant is eligible for benefits if he has an impairment that meets or equals an impairment found in the Listing of Impairments. 20 C.F.R. § 404.1520(d) (2008). The listings specify the criteria for impairments that are considered presumptively disabling. 20 C.F.R. § 404.1525(a) (2008). To establish disability under Medical Listing 12.05(c), a claimant must meet the definition for mental retardation – "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. 404, Subpt. P, App. 1, § 12.05 (2008). This is commonly referred to as the "capsule definition" for this listing. Lax v. Astrue, 489 F.3d 1080, 1085 (10th Cir. 2007). Additionally, the claimant must establish: "a valid verbal, performance, or full scale I.Q. score of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. 404, Subpt. P, App. 1, § 12.05(c) (2008); see Edwards v.

4

Heckler, 755 F.2d 1513, 1517 (11th Cir. 1985) (recognizing that "significant" under section 12.05(c) involves something more than slight or minimal, but less than "severe").

On October 27, 2005, the plaintiff underwent a consultative psychological examination performed by John R. Goff, Ph.D. First, Dr. Goff obtained the plaintiff's history which included, among other things, that he dropped out of school in the third grade at age thirteen; that he had a heart attack in 1993 and underwent coronary bypass grafting in 2003; and that he had not worked since 1993. Second, recognizing a disability issue, Dr. Goff pointed out that dissimulation was also an issue and administered a 21-Item Memory Test for malingering and dissimulation of cognitive deficits. Dr. Goff noted that based on the plaintiff's forced choice recognition score of 16, straightforward performance was indicated.

Third, Dr. Goff performed a psychological assessment which included administration of several tests, including the third edition of the Wechsler Adult Intelligence Scale (WAIS-III), on which the plaintiff obtained a full scale I.Q. score of 63. Dr. Goff found that this score fell within the mildly retarded range of psychometric intelligence and was compatible with the plaintiff's background and his presentation. The plaintiff obtained a verbal scale I.Q. score of 65 and a performance or visuopractic I.Q. score of 68. Dr. Goff found that both scores also fell within the mildly retarded range. Dr. Goff concluded that the plaintiff was functioning within the mildly mentally retarded range of psychometric intelligence, and that based on his educational background and substantial adaptive skills deficits, it could be assumed that he was identified as mentally retarded during the developmental period. The plaintiff was also functionally illiterate and could perform mathematical computations only at the first grade level. Dr. Goff also opined that the plaintiff could understand, follow, and carry out very simple instructions but could not deal with

5

complex or written instructions. In addition to this assessment, Dr. Goff submitted a medical source statement wherein he assessed the plaintiff with "extreme" and "marked" limitations in numerous components of mental functioning.

At step two of the sequential evaluation process in this case, the ALJ found the plaintiff did not have a medically determinable severe cognitive impairment. In making this finding, the ALJ essentially discredited Dr. Goff's assessment of "debilitating mental limitations" based on what the ALJ found to be contrary evidence. The ALJ based his findings largely on the plaintiff's seventeen-year history of successful performance of skilled work as a concrete finisher; his departure from work based on a non-medical reason; the fact that he did not attend special education classes; his testimony that he could make change at the checkout counter; and his ability to follow Dr. Goff's instructions during the examination.

At step three the ALJ made only a general statement that the plaintiff's impairments did not meet or medically equal the severity of any listing. The Court finds the ALJ completely ignored the objective medical evidence in the record and gave no consideration to whether the medical evidence established that the plaintiff met Listing 12.05(c). Indeed, despite the issue being briefed and submitted by the plaintiff's attorney before the ALJ made his decision, the ALJ does not discuss the listing by name and gives no analysis of it whatsoever. Accordingly, there can be no meaningful judicial review. See Turner v. Astrue, No. 07-645, 2008 WL 3853375, at *14 ( W.D. La. Aug. 18, 2008) (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)). see also Brindisi ex rel. Brindisi v. Barnhart, 315 F.3d 783, 786 (7th Cir. 2002) ("The omission of any discussion of [the plaintiff's] impairments in conjunction with the Listings frustrates any attempt at judicial review. . . .")

The plaintiff provided medical evidence with respect to all criteria of Listing 12.05(c). His I.Q. scores were under 70, and Dr. Goff concluded it was reasonable to assume that he was identified as mildly mentally retarded during the developmental period because of his "fairly substantial" current adaptive skills deficits and that he dropped out of school in the third grade at age thirteen. Furthermore, the ALJ himself found that the plaintiff suffered from "severe" physical impairments, namely cardiac disorders and hypertension. The ALJ offers no discussion regarding whether this evidence does or does not satisfy 12.05(c). Instead, the ALJ chose to focus on other evidence in the record which he determined supported a finding that the plaintiff had no severe cognitive impairment.

On remand, if the ALJ does indeed not believe the I.Q. scores to be valid, he must provide a specific explanation for his decision. Certainly, an ALJ may examine other evidence in the record to determine whether a claimant is mentally disabled. See Muse v. Sullivan, 925 F.2d 785 (5th Cir. 1991). However, because ALJ's are not physicians, they may not hastily reject I.Q. scores. See Gonzalez v. Barnhart, No. SA-05-CA-0282-RF 2006 WL 1875912, at *5 (W.D. Tex. June 30, 2006) (citing Wiggins v. Apfel, 29 F.Supp.2d 486, 492 (N.D. Ill. 1998) (finding ALJ impermissibly substituted layman's view of plaintiff's mental condition in lieu of expert medical opinion)). In the present case, the ALJ provided no discussion regarding the validity of the plaintiff's I.Q. scores. Accordingly, the decision of the Commissioner should be reversed and remanded for a determination of the validity of the plaintiff's I.Q. scores and whether the plaintiff's condition met or medically equaled Listing 12.05(c).

The Court shall enter a judgment consistent with this opinion.

So **ORDERED**, this the 19th day of September, 2008.

/s/ Sharion Aycock
**U.S. DISTRICT COURT JUDGE**